UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:08-CR-10 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| JOHN L. MISER ) | |

**REPORT AND RECOMMENDATION**

Defendant has filed a motion to suppress all evidence which the United States in-tends to introduce against him in this case, asserting that the evidence was obtained in violation of the Fourth Amendment to the Constitution of the United States. (Doc. 18). This motion was referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on July 22, 2008.

Defendant is charged in a five-count indictment with the following offenses: (1) possession of 500 grams or more of cocaine with the intent to distribute; (2) possession of marijuana with the intent to distribute; (3) possession of Oxycodone with the intent to distribute; (4) possession of a firearm in furtherance of the three foregoing drug offenses; and (5) possession of a firearm by a convicted felon. All the evidence to be introduced against defendant - the marijuana, cocaine, Oxycodone, and the firearm - were seized as a result of a search of a camping trailer occupied by defendant.[1]

---

[1] At the suppression hearing, there was testimony regarding the discovery of cocaine and marijuana, but nothing was said about Oxycodone or firearms. It therefore is assumed that the gun and Oxycodone were found in the camping trailer at the same time as the marijuana and cocaine were found.

This suppression hearing was a bit out of the ordinary in two ways: first, the defendant testified; second, there is a significant dispute regarding some of the facts. There were three witnesses: Eric Carson and David Cribley, both officers with the Hamblen County Sheriff's Department, and the defendant. The officers' respective ver-sions of the facts were consistent and will be recited together, singly. The defendant's version will follow.

### *THE OFFICERS' VERSION*

In January 2008, Eric Carson and David Cribley were officers with the Hamblen County Sheriff's Department, and were assigned to the Third Judicial District Drug Task Force. On the morning of January 18, 2008, both officers intended to perform "drug interdiction" on Interstate 81 in Hamblen County. As Officer Carson was calibrating the radar unit on the car he intended to use that day, he was approached by an individual whom he did not know. This person, hereinafter referred to as the "tipster," told Officer Carson that two men, one named Miser and the other Crum, were living in a camping trailer on Lot 93 in the Everhart Campground in the Three Springs area of Hamblen County, and that both men were "wanted." This tipster also said that the camping trailer contained sizable quantities of illegal drugs. The tipster refused to give his name, and neither did he provide Officer Carson with any other information beyond what was just stated.[2]

---

[2]Officer Carson unambiguously testified that he did not know the identity of the tipster. However, when defense counsel began questioning Officer Carson concerning the physical description of the tipster, it was apparent that Carson was hesitant and less than forthcoming. At that point, counsel for the United States objected and, after giving the matter some thought, the court sustained the United States' objection.

If the informant's identity was known to Officer Carson, there would have been no basis to require the United States to disclose that identity to the defendant inasmuch as the informant was not a *participating* informant in the sense of *United States v. Whitley*, 734 F.2d 1129 (6th Cir. 1984). As discussed in the body of the report and recommendation, the tipster's information merely provided the motivation for the officers to go to the Everhart Campground and there talk to the defendant; the tipster's identity, even if known, is completely irrelevant to any issue in this

2

Officer Carson told Cribley what he had just been told by the tipster, and they both decided to go by the Everhart Campground on their way to the Interstate to check out the tipster's report of two wanted men, and a cache of drugs, in the trailer. The lot numbers were difficult to read, and the officers drove by the subject trailer before they stopped and parked. As they were walking back to Lot 93, a man was standing out on the porch of the trailer, watching them as they approached. Carson identified himself and Cribley, and then asked the man his name. The man identified himself as John Miser. Carson then asked Miser if he had any identification, to which Miser responded that he did not. Officer Carson then asked Miser his date of birth, and Miser provided it. Carson then radioed Miser's name and his date of birth to his dispatcher, requesting a search of NCIC records to see if Miser was indeed wanted by the authorities. The dispatcher shortly radioed back, indicating that Miser was wanted in the state of Florida on a warrant for contempt of court. At that point, Carson asked his dispatcher to determine if Florida would extradite Miser on this charge. While awaiting that information, Carson asked Miser if there was anyone else in the trailer, and Miser responded that there was not. Carson then specifically asked if Crum was in the trailer, and Miser again answered in the negative. Miser was extremely nervous and agitated, and he told Carson to "come in and look for yourself." According to Carson, as the officers walked on the porch and Miser opened the door of the camper, an incredibly strong odor of marijuana flooded out from the trailer, prompting Cribley to ask about it. Miser responded that he had "just got through burning one," i.e., smoking a marijuana joint.

When they stepped inside the trailer, Carson saw, in plain view, a partially smoked marijuana joint in an ashtray near the door. Cribley asked about the marijuana cigarette, and Miser

case.

3

said that that was the one which he had been smoking.

At this point, Carson started walking towards another room in the camper, the door to which was closed. The defendant Miser told him to stop, that he should not go into that room. Carson stopped, arrested defendant for the marijuana joint, and took him outside the trailer where he read him his rights pursuant to *Miranda v. Arizona*.[3] Carson indicated that he wanted to obtain a search warrant for the trailer, at which point defendant gave both his verbal and written consent for the officers to search the trailer. Nevertheless, out of an abundance of caution, Carson elected to apply for a search warrant. As Carson applied for the search warrant, Cribley transported defendant to the Hamblen County Jail. Other deputies were called to the trailer to "secure" it until the search warrant was obtained.[4]

Carson obtained the search warrant and returned to the camping trailer to execute it. In the bedroom which defendant previously denied Carson permission to enter, he found 15 large bales of marijuana (approximately 170 pounds), and a kilo of cocaine. Additionally, some other marijuana was found. As noted in footnote 1, *supra*, it is assumed that he also found a firearm and Oxycodone.

### *DEFENDANT'S VERSION*

Defendant was standing on the porch of the camping trailer as the officers approached. He

---

[3]384 U.S. 436 (1966).

[4]Defendant raises no issued about the validity of the search warrant itself; indeed, it was barely mentioned during the suppression hearing, and it was not filed as an exhibit. It is defendant's position that the information in that search warrant that establishes probable cause was based on observations of the officers made during the course of an illegal entry into the defendant's trailer.

had been smoking marijuana inside the trailer, and he had opened the door to the trailer to allow it to "air out." As the officers approached, he partially shut the door to the camper, but it was still ajar.

When they drew near, Officer Carson identified himself and Cribley to defendant, and then asked defendant for his name, which he gave. They then asked defendant for identification, and he said that he had none. Carson then asked for defendant's date of birth, which he provided, and which Carson then called in to his dispatcher along with Miser's name. Shortly thereafter, the dispatcher radioed back to Carson that defendant was wanted in the state of Florida.

Carson then asked defendant if anyone else was in the trailer, and defendant responded, "no." At this point, both officers were standing on the porch, with def-endant. The officers noted the smell of marijuana and asked defendant about it. They also asked to go inside the trailer and defendant refused. The officers then said that they had the right to go inside the trailer if they smelled marijuana, and they proceeded to do so. Just as they entered, the officers saw the partially burned marijuana cigarette in the ashtray.

Defendant testified that the officers walked through the entire trailer, including the bedroom which was separated from the main room by the closed door. In other words, defendant testified that Carson went into the closed room and saw the 15 bales of marijuana. According to defendant, Carson came out of this room and announced to Cribley, "We'd better get a warrant," at which point the officers arrested defendant and took him outside. Defendant admitted that he signed the written consent to search the trailer, but only because they had already seen all there was to see.

Defendant testified that the odor of the baled marijuana (as opposed to the odor of the

smoked marijuana) was extremely strong in the trailer, but that it could not be smelled outside the trailer.

*FINDINGS*

As can be seen, the officers' version and the defendant's version are consistent in some respects, and totally divergent in others. To the extent it is necessary to do so, the court adopts the officers' version, and rejects defendant's. However, as discussed hereafter, even if the defendant's version is assumed to be true, nevertheless his motion to suppress should be denied.

The Fourth Amendment protects a person's reasonable expectation of privacy against governmental intrusion, and this obviously includes a person's home. *Steagald v. United States*, 451 U.S. 204 (1981). It is undisputed that defendant had a reasonable expectation of privacy in the camping trailer. Thus, the officers' initial entry into this camping trailer had to be based either upon a search warrant or upon some exception to the Fourth Amendment's requirement for a warrant. It is undisputed that the officers' *initial* entry was not on the basis of a warrant; however, the defendant invited them to step into the house to confirm for themselves that no one else was present and, when they did so, they detected the strong odor of marijuana, as well as observing in plain view the source of that odor, the partially smoked marijuana joint. At that point, the officers had probable cause to arrest defendant for unlawful possession of marijuana. It also provided the probable cause to support the issuance of a search warrant, which in fact they subsequently obtained and executed, resulting in the discovery and seizure of a huge quantity of marijuana and cocaine.[5] Of course the officers also had defendant's written consent to search, but they chose not to rely

---

[5]As previously noted, defendant did not argue that the search warrant itself was not supported by probable cause.

upon it, choosing instead to secure a search warrant.

Even if defendant's version of the facts is assumed to be true, these officers nevertheless had a lawful basis to support their entry into the camping trailer. Defendant had just smoked a marijuana cigarette, and the small camping trailer was full of marijuana smoke. He had opened the door to the trailer and stepped out onto the porch to allow the trailer to air out. When the officers approached him, defendant attempted to shut the door to the trailer, but he did not do so completely; the door remained slightly open. According to defendant's testimony, the officers stepped up on the porch with him and, while talking to him there, they asked him about the odor of marijuana.[6] Having detected the odor of marijuana, the officers were justified, by "exigent circumstances," to enter the trailer. "Exigent circumstances," of course, is an exception to the Fourth Amendment's requirement for a warrant. A warrantless entry based upon probable cause is permitted when there is some exigency or compelling urgency for the protection of the police or the public, or to prevent the destruction of contraband or evidence. There are four general categories of exigent circumstances that support a warrantless entry: (1) hot pursuit of a fleeing felon; (2) the likelihood of imminent destruction of evidence; (3) prevention of a suspect's escape; and (4) a risk of danger to the police or the public. *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). If a warrantless entry is justified on the basis of an exigent circumstance, the police may seize any evidence that is in plain view. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

Rather obviously, the only "exigent circumstance" applicable in this case was the likelihood that defendant would destroy evidence, specifically, the marijuana indicated by the strong odor

---

[6]Defendant did not suggest that these two narcotics officers were incapable of recognizing the distinctive odor of marijuana.

detected by the officers.

To justify a warrantless entry and search on the basis of exigent circumstances, the United States must show (1) a need for immediate action that would have been defeated if the officers had taken the time to secure a warrant, (2) a sufficiently important governmental interest being served by that warrantless entry, and (3) in weighing the governmental interest against the defendant's privacy interest in his home, the defendant's conduct diminished that right. *See, United States v. Rohrig*, 98 F.3d 1506, 1518 (6th Cir. 1996).

Bearing in mind the relative ease with which one could destroy evidence of a smoked marijuana joint, the need for immediate action is apparent. All that would have been required for defendant to destroy the evidence of his use of marijuana would be to flush the joint down the toilet or wash it down the drain, or even swallow it. It would have been a quick and easy matter to dispose of the marijuana joint. A delay of even a minute or two, much less the hour or two required to get a warrant, would have rendered moot the entire matter. The governmental interest being served by the warrantless entry was sufficiently important. To hold otherwise would be tantamount to declaring that police officers are powerless to enforce the drug laws even when they are surrounded by the odor of burning marijuana. If they are required to get a warrant, it is beyond reasonable argument that the evidence that generated that odor will be long gone by the time a warrant is obtained. Lastly, the defendant's conduct in smoking the marijuana and intentionally allowing the marijuana smoke to travel to the outside where it could be smelled by the officers was an action that diminished the right of privacy he expected in his dwelling. In this regard, it is noted that the officers had the right to walk upon defendant's porch without implicating the Fourth

Amendment. Even though the front porch of a dwelling arguably is within the curtilage and therefore subject to the protection of the Fourth Amendment, there was no "search" when the officers stepped onto the porch. They went there, not to search the porch, but only to converse with defendant. *See, United States v. Correa*, 1804309 (N.D. Fla. 2008), and *Davis v. United States*, 327 F.2d 301, 303 (9th Cir. 1914). Once upon the porch, the officers noted the strong odor of burning marijuana, which ultimately justified their entry into the dwelling on the basis of exigent circum-stances.

Once inside, the officers observed in plain view the marijuana joint. Based on that observation, the officers rightly took defendant into custody and thereafter procured a search warrant. Upon the execution of the search warrant, the bales of marijuana and the kilo of cocaine were discovered.

### *CONCLUSION*

Under either the officers' version of the facts, which this court credits, or the defendant's version, the officers' entry into defendant's house was justified. Under the officers' version, their entry was justified on the basis of the defendant's consent - indeed, his invitation to them that they enter. Under the defendant's version of the facts, the officers' entry was justified on the basis of exigent circumstances, *viz*, the strong odor of burning marijuana and the extreme likelihood that defendant would destroy the evidence during the time required to obtain a search warrant. Upon entering the dwelling on the basis of this exigent circumstance, or on the basis of defendant's consent, the officers observed in plain view a burning marijuana cigarette, which inexorably led to the issuance of the search warrant that resulted in the seizure of the bales of marijuana and the

cocaine.

It is respectfully recommended that defendant's motion to suppress be denied.[7]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[7]Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).